**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

**SCOTT EDWARD STINES,**

**Plaintiff,**

**v.**

**ANDREW SAUL,**
**Commissioner of Social Security,**

**Defendant.**

**NO. 5:19-CV-00506-MAS**

**OPINION & ORDER**

Plaintiff Scott Edward Stines ("Stines") appeals the Commissioner's denial of his application for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act. The Court confronts the parties' dueling summary judgment motions. [DEs 17, 19]. For the reasons here discussed, the Court finds that the Administrative Law Judge ("ALJ") misapplied the governing Social Security regulations by failing to properly explain his weighing of the medical opinions and offer substantial evidence in the record supporting his analysis. The Court grants Stines's motion and reverses the Commissioner's non-disability finding, denies the Commissioner's competing dispositive motion, and remands this matter for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

## I. FACTUAL AND PROCEDURAL BACKGROUND

Stines, then 44 years old, protectively filed an application for SSI benefits on July 5, 2016, alleging disability beginning on June 28, 2012. [R. at 16, 37].[1] Stines attended school through completion of the twelfth grade. [R. at 40–41]. He has past retail work experience and has previously performed various odd jobs, including snow shoveling, bush trimming, and mowing. [R. at 41–42, 46]. The Social Security Administration denied Stines's SSI claim initially on August 15, 2016 and upon reconsideration on October 28, 2016. [R. at 16]. Stines filed a written request for a hearing on December 19, 2016. [*Id.*].

ALJ Jonathan Stanley conducted a hearing on July 19, 2018 in Lexington, Kentucky. [R. at 33–61]. Patsy Hughes, a non-attorney representative, represented Stines at the hearing, and impartial Vocational Expert ("VE") Martha Goss was also present and testified. [R. at 16]. ALJ Stanley issued an opinion on November 1, 2018, finding that Stines was not disabled under the Social Security Act during the relevant period. [R. at 16–27]. ALJ Stanley found that Stines had not engaged in substantial gainful activity since the application date and suffered from several severe impairments, including: lumbosacral pain, right hip and groin pain, right knee pain, seizure disorder/pseudoseizures, conversion disorder with attacks or seizures, major depressive disorder, bipolar disorder, anxiety disorder, panic disorder without agoraphobia, and cannabis use disorder/dependence. [R. at 18–19]. However, the ALJ concluded that none of Stines's impairments met a listing in Subpart P, Appendix I. [R. at 19–22]. *See* 20 C.F.R. §§ 416.920(d), 416.925, 416.926.

ALJ Stanley ultimately found that Stines had the residual functional capacity ("RFC") to perform medium work, with certain outlined modifications. [R. at 22–26]. *See* 20 C.F.R.

[1] Stines previously unsuccessfully sought Title XVI benefits in November 2014. [R. at 16]. He did not appeal the denial of that application, and it is not here at issue.

§ 416.967(c). Though the ALJ found that Stines could not perform past relevant work, he did find, based on Stines's age, education, work experience, RFC, and VE Goss's testimony at the hearing, that Stines could perform jobs that existed in significant numbers in the national economy. [R. at 26–27]. *See* 20 C.F.R. §§ 416.969, 416.969(a). These representative jobs, as described in the Dictionary of Occupational Titles ("DOT"), included: sorter/packer, benchworker, and machine tender. [R. at 27]. ALJ Stanley found the VE's testimony consistent with the DOT. [*Id.*]. Accordingly, based on his review of the record, the ALJ concluded that Stines had not been disabled since July 5, 2016 (the date of application). [*Id.*]. *See* 20 C.F.R. § 416.920(g).

Stines sought Appeals Council review on December 1, 2018. [R. at 5]. The Appeals Council denied the review request on October 29, 2019. [R. at 1]. Stines subsequently filed the instant action on December 30, 2019. [DE 1, Complaint]. Stines moved for summary judgment in May 2020, and the Commissioner filed a cross-motion in June 2020. [DE 17, 19]. Both motions are ripe for review.

## II. LEGAL FRAMEWORK[2]

Judicial review of the ALJ's decision is deferential and strictly limited. The Court's sole task is to determine whether the ALJ applied the correct legal standards and whether the ALJ's factual findings are supported by substantial evidence in the record. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422

[2] The Court notes that the legal standard for SSI claims—applicable here—mirrors the standard for disability insurance benefits (DIB) claims. *See Bailey v. Sec'y of Health & Human Servs.*, 922 F.2d 841, No. 90-3265, 1991 WL 310, at *3 (6th Cir. 1991) (table). "The standard for disability under both the DIB and SSI programs is virtually identical." *Roby v. Comm'r of Soc. Sec.*, No. 12-10615, 2013 WL 451329, at *3 (E.D. Mich. Jan. 14, 2013), *report and recommendation adopted*, 2013 WL 450934 (E.D. Mich. Feb. 6, 2013); *see also Elliott v. Astrue*, No. 6:09-CV-069-KKC, 2010 WL 456783, at *4 (E.D. Ky. Feb. 3, 2010). The Court thus references both SSI and DIB case law interchangeably throughout, mindful of the distinct Title XVI SSI-specific regulations.

(6th Cir. 2008); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"). Substantial evidence is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "The substantial-evidence standard allows considerable latitude to administrative decision makers" and "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

The Court must make its substantial evidence determination based on the record as a whole. *Cutlip*, 25 F.3d at 286. However, the Court need not comb the entire (lengthy) record in search for facts supporting under-developed arguments. [*See* DE 16 (General Order No. 13-7) (citing *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006)) ("The parties shall provide the Court with specific page citations to the administrative record to support their arguments. The Court will not undertake an open-ended review of the entirety of the administrative record to find support for the parties' arguments.")]. Further, the Court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Court must affirm the ALJ's decision if there is substantial evidence in the record to support it, even if substantial evidence might also support the opposite conclusion. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 393 (6th Cir. 2004); *Mullen*, 800 F.2d at 545. Likewise, the Court must affirm any ALJ decision supported by substantial evidence, even if the Court itself might have reached a different original result. *See Longworth v. Comm'r of Soc.*

*Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

For context, the Court briefly outlines the ALJ's five-step sequential analysis. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 416.920(a)(4). In the first step, the ALJ decides whether the claimant is performing substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). In the second step, the ALJ determines whether the claimant suffers from any severe impairments. *Id.* at § 416.920(a)(4)(ii). In the third step, the ALJ decides whether such impairments, either individually or collectively, meet an entry in the Listing of Impairments. *Id.* at § 416.920(a)(4)(iii). In the fourth step, the ALJ determines the claimant's RFC and assesses whether the claimant can perform past relevant work. *Id.* at § 416.920(a)(4)(iv). Finally, in the fifth step, the burden shifts to the Commissioner. The ALJ must consider and decide whether there are jobs that exist in significant numbers in the national economy that the claimant could perform based on RFC, age, education, and work experience. *Id.* at § 416.920(a)(4)(v). If the ALJ determines at any step that the claimant is not disabled, the analysis ends there. *Id.* at § 416.920(a)(4).

## III. ANALYSIS

Stines broadly argues that the ALJ's decision in this case is not supported by substantial evidence. Specifically, Stines argues that the ALJ misapplied the governing regulations and Social Security Rulings by heavily weighing—without proper explanation—outdated state agency psychological consultants' opinions that failed to account for critical medical evidence germane to the relevant period. Stines further argues that the ALJ did not provide adequate reasoning for

the weight assigned to Stines's treating mental health providers' opinions and improperly discounted Stines's subjective claims of psychological impairment.[3]

On careful review of the full administrative record, the Court concludes that the ALJ did not appropriately explain his rationale for heavily weighing outdated or non-examining state agency consultant opinions—the sole psychological opinions that the ALJ ultimately afforded great weight in his RFC assessment. The ALJ's analysis in this regard is insufficiently developed to permit meaningful review in contravention of the relevant regulatory standards and Social Security Rulings. As the state agency consultants' opinions, being the only opinions receiving great weight, apparently formed the basis for the ALJ's psychological RFC assessment, the Court cannot conclude on this record that substantial evidence ultimately supports the ALJ's weighing of the psychological opinion evidence and his resulting RFC determination.

Thus, remand is required to allow the ALJ to reconsider and reweigh the psychological opinion evidence per the proper standards and/or more fully explain the reasoning supporting his psychological RFC conclusions. Because the Court finds remand proper on these grounds, it does not reach Stines's additional arguments concerning the ALJ's discounting of treating provider opinions and subjective complaints.

## A. THE ALJ DID NOT PROPERLY EXPLAIN THE WEIGHT ASSIGNED TO THE STATE CONSULTATIVE DOCTORS' PSYCHOLOGICAL OPINIONS.

Stines first contends that the ALJ gave too much weight to the opinion of Dr. Jennifer Fishkoff, Psy.D., who conducted a consultative examination and made attendant findings on February 5, 2015. [R. at 396 (Ex. 5F)]. Stines argues that this opinion was rendered too far before the start of the relevant period (that began in July 2016), did not consider critical evidence in the

[3] As an overarching matter, Stines's arguments concern only the psychological medical evidence and opinions. The briefing does not challenge or address, and the Court thus does not review, the ALJ's conclusions relating to the physical impairment evidence.

record that came after February 2015, and was generally inconsistent with the other medical evidence of record. Most critically, Stines asserts that Dr. Fishkoff's opinion preceded Stines's brother's suicide and an onslaught of related psychological impairments that impact his RFC. Second, Stines faults the ALJ for affording great weight to the non-examining state agency consultant opinions from Dr. Dan Vandivier and Dr. Jane Brake that he likewise argues did not account for the full medical record. [R. at 65–67 (Ex. 1A), 80–82 (Ex. 3A)]. The Court considers each set of issues in turn.

**1. <u>Dr. Fishkoff's Opinion (Exhibit 5F)</u>**

Dr. Fishkoff, a licensed psychologist and state agency consultant, offered an RFC opinion based on her consultative exam that occurred on February 5, 2015. [R. at 396–402 (Ex. 5F)]. Dr. Fishkoff opined that Stines presented with average intellectual functioning and noted that his judgment, reasoning abilities, general knowledge, attention/concentration, and recall were within normal limits. [R. at 401]. She further determined that his ability to understand, retain and follow instructions, sustain attention, and perform simple and repetitive tasks was within normal limits. [*Id.*]. Based on her review of his mental status, Dr. Fishkoff found Stines "capable of tolerating the stress and pressures associated with day-to-day work activity." [R. at 402]. Per the record, Dr. Fishkoff's opinions appear to be based entirely on her consultative exam and, thus, premised on her observations of Stines at that time and on Stines's own statements during the exam. There is no indication in the record that Dr. Fishkoff considered Stines's broader medical record or any objective medical evidence or findings from treating providers.

Despite the relatively limited evidentiary foundation for Dr. Fishkoff's opinion, the ALJ afforded her conclusions "great weight." [R. at 24]. In explanation, ALJ Stanley stated only that Dr. Fishkoff's "statements appear[ed] to be consistent with the record at large." [*Id.*]. The ALJ offered no further analysis or discussion of Dr. Fishkoff's findings in context of the full record and

did not provide any citations to the referenced "consistent" proof. Moreover, the ALJ did not acknowledge that Dr. Fishkoff's opinion predated the start of the relevant period by nearly a year-and-a-half. Accordingly, the ALJ's decision does not reflect that he recognized or considered the fact that Dr. Fishkoff was, at the time she rendered her RFC opinion, unaware of Stines's objectively worsening psychological symptoms following the death of his brother. The record confirms that, in December 2015, Stines's brother killed his (Stines's brother's) wife and then himself, triggering some degree of psychological decline. [*See, e.g.*, R. at 445 (reflecting "objective" observations from Stines's treating physician, Dr. Robert Hendrickson, on January 21, 2016 that found Stines to be "agitated, upset[,]" and "certainly bipolar" after his brother's death);[4] R. at 419 (reflecting February 2016 provisional diagnoses of bipolar disorder, depression, anxiety disorder, and panic disorder from licensed clinical social worker Susan Updike).[5]

---

[4] Dr. Hendrickson relatedly opined, in December 2016 and upon Stines's request for "a letter for [his] lawyer for disability[,]" that Stines was "disabled due to his bipolar disorder." [R. at 448]. The Court agrees with the ALJ and Commissioner that this particular statement—merely a conclusion as to Stines's disabled status for Social Security qualification purposes—is within the ALJ's purview and is not a medical finding entitled to controlling weight. Regardless, in weighing the full record and assigning comparative weight to the various sources, the ALJ is required to consider Dr. Hendrickson's treatment notes and findings surrounding the relevant period and concerning potentially disabling impairments related to bipolar disorder and other psychological issues. Upon review of these records, the Court finds at least some objective medical evidence corroborating Stines's claim that his symptoms worsened following his brother's death. The ALJ's decision does not indicate whether he considered the fact that Dr. Fishkoff's consultative opinion predated and conflicted with a notable body of treating provider evidence when assigning weight to Dr. Fishkoff's conclusions.

[5] A licensed clinical social worker is an "other" medical source pursuant to the Social Security Regulations. *See* Soc. Sec. Rul. 06-03P, 2006 WL 2329939 (S.S.A. Aug. 9, 2006); *see also* 20 C.F.R. § 416.913(d). Though only "acceptable medical sources" may be considered treating sources entitled to controlling weight or independently establish a medically determinable impairment, other medical sources are nonetheless entitled to consideration as a part of the full record. "Opinions from these medical sources, who are not technically deemed 'acceptable medical sources[,]' . . . are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." Soc. Sec. Rul. 06-03P, 2006 WL 2329939, at *3. *See also Woodcock v. Comm'r of Soc. Sec.*, 201 F. Supp. 3d 912, 920–21 (S.D. Ohio 2016).

The ALJ's decision does not adequately explain why he viewed Dr. Fishkoff's February 2015 opinion as deserving of "great weight" in the RFC calculus despite its age and Dr. Fishkoff's limited (or nonexistent) evaluation of the objective record. Indeed, the ALJ did not acknowledge or discuss these apparent problems with the consultative opinion. Critically,

> The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker. For example, the opinions of physicians or psychologists who do not have a treatment relationship with the individual are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources.
>
> For this reason, the opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Council levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist.

Soc. Sec. Rul. 96-6P, 1996 WL 374180, at *2 (S.S.A. July 2, 1996). *See also* 20 C.F.R. § 416.927. In addition to such factors as an opinion's supportability and consistency with the record as a whole, the ALJ must consider "other factors," including "the extent to which a medical source is familiar with the other information in [the claimant's] case record[.]" 20 C.F.R. § 416.927(c)(6).

The ALJ in this case did not address the supportability of Dr. Fishkoff's opinion in terms of objective medical proof beyond Dr. Fishkoff's own one-time, consultative examination. Nor did he recognize or account for Dr. Fishkoff's lack of familiarity with the new and relevant psychological evidence that existed as of 2016. And, though the ALJ made perfunctory reference to the opinion's supposed consistency with the rest of the record, this statement—devoid of citation or reference to specific evidence—is far too generic to offer meaningful insight into the ALJ's

analysis.[6] The Court cannot assume that the materially changed circumstances in 2016, namely the new environmental stressors surrounding Stines's brother's murder/suicide, would not have impacted Dr. Fishkoff's assessment of Stines's psychological functioning. *See Karns v. Astrue*, No. 3:10-CV-318, 2012 WL 1185990, at *2 (S.D. Ohio Apr. 9, 2012), *report and recommendation adopted*, 2012 WL 1463546 (S.D. Ohio Apr. 27, 2012) (concluding that an outdated medical source opinion that did not account for an intervening heart attack could not constitute substantial evidence and that the ALJ's reliance on it was error, as the Court could not assume that the medical opinion would not have changed based on the new information, and the ALJ failed to acknowledge the limited extent of the source's familiarity with the full record).

The ALJ failed to adhere to the § 416.927 framework by neglecting to adequately discuss the regulatory factors and explain how the balance of such factors warranted assigning Dr. Fishkoff's opinion great weight. This is particularly concerning given the potential flaws in Dr. Fishkoff's opinion—*i.e.*, that it was rendered a year-and-a-half before the relevant period and predated a psychologically impactful event in Stines's life, that it was based in substantial part on Stines's own subjective responses to Dr. Fishkoff,[7] and that it apparently encompassed no review

[6] Even reading the ALJ's decision as a whole, as the Court must, it is unclear precisely what evidence the ALJ deemed consistent with Dr. Fishkoff's opinion when formulating Stines's RFC. The ALJ referenced—earlier in the decision and not in connection with the specific RFC discussion—normal thought processes documented both by Dr. Fishkoff in February 2015 and by Dr. Carol Miller in May 2016 [R. at 423–425], but the ALJ did not acknowledge the intervening suicide, substantively discuss Dr. Miller's findings in any way, or assign Dr. Miller's conclusions and records any particular weight. Though some conclusions from Dr. Miller indeed were consistent with Dr. Fishkoff's earlier findings, Stines's psychological circumstances and the medical evidence of record supporting those opinions changed substantially between February 2015 and May 2016. There is no indication that the ALJ considered the changed circumstances or record. At bottom, the conclusory reference to Dr. Fishkoff's opinion's consistency with "the record at large" leaves the Court to speculate as to what other evidence the ALJ in fact considered consistent and viewed as justifying affording Dr. Fishkoff's opinion such great weight.

[7] The Court finds it somewhat incongruous that the ALJ afforded Dr. Fishkoff's opinion great weight despite it consisting largely of Stines's own statements to Dr. Fishkoff concerning his

of the record or medical evidence beyond Dr. Fishkoff's own one-time consultative exam. *See Trent v. Astrue*, No. 3:09-CV-453, 2012 WL 4604411, at *3 (S.D. Ohio Oct. 3, 2012), *report and recommendation adopted*, 2012 WL 5342495 (S.D. Ohio Oct. 29, 2012) (finding that the ALJ's incomplete discussion of the regulatory factors in relation to state agency consultant opinions "constituted a failure to apply the correct legal criteria because the Regulations and Rulings required the ALJ to weigh the opinions of one-time examining physicians and record-reviewing physicians under the regulatory factors, including supportability, consistency, and specialization"). The ALJ's discussion of Dr. Fishkoff's opinion does not adequately explain or support, per the required regulatory framework, the ultimate decision to afford it great weight. It thus cannot constitute substantial evidence underlying the ALJ's RFC determination.

**2. Dr. Brake's and Dr. Vandivier's Opinions (Exhibits 1A and 3A)**

The ALJ also gave great weight to the psychological findings and opinions of Dr. Jane Brake, Ph.D., and Dr. Dan Vandivier, Ph.D., both state agency consultants. [R. at 25]. ALJ Stanley found Dr. Brake's and Dr. Vandivier's opinions to be "supported by the claimant's treatment notes and consultative exam[,]" and concluded that they were consistent with other records indicating a limited medium-work RFC. After reviewing a portion of Stines's medical records, but without conducting a consultative exam himself, Dr. Vandivier found in August 2016 that Stines was able to understand and remember simple instructions and procedures, sustain

---

mental state and daily functioning, but later discredited may of Stines's subjective statements concerning mental functioning made to treating providers and the treating providers' resulting opinions. [*See* R. at 25 (discounting subjective claims of anxiety made to Dr. Hendrickson)]. The ALJ did not adequately discuss or explain these varying credibility determinations, nor did he acknowledge the many subjective statements from Stines underlying Dr. Fishkoff's opinion. *Cf. Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 379 (6th Cir. 2013) ("Although the ALJ was quite critical of the alleged inconsistencies between [the treating provider's] opinions and other record evidence, his decision does not acknowledge equivalent inconsistencies in the opinions of the consultative doctors. A more rigorous scrutiny of the treating-source opinion than the nontreating and nonexamining opinions is precisely the inverse of the analysis that the regulation requires.").

attention for simple tasks for up to two-hours, interact occasionally as needed with supervisors and peers (but not with the public), and adapt adequately to situational conditions and changes in a routine work setting. [R. at 65, 71–72]. Likewise, after reviewing some but not all medical records and without conducting a separate consultative exam, Dr. Brake reached roughly the same conclusions in October 2016. [R. at 80, 86–87]. It does not appear that Dr. Vandivier had access to or reviewed any records from Stines's primary care physician, Dr. Hendrickson, or later treatment records from physician Dr. John Allahham. [*See* R. at 63–64]. Dr. Brake considered some, but not all, of the treatment records from Dr. Hendrickson and Dr. Allahham. [R. at 77–79 (requesting additional records from these physicians)].

A decision to weigh non-examining state agency consultant opinions more heavily than treating source opinions is not, in and of itself, categorically error. "In appropriate circumstances, opinions from State agency medical . . . consultants . . . may be entitled to greater weight than the opinions of treating or examining sources." *Blakley*, 581 F.3d at 409 (quoting Soc. Sec. Rul. 96–6p, 1996 WL 374180, at *3). "One such circumstance may occur, for example, when the 'State agency medical . . . consultant's opinion is based on a review of a complete case record that . . . provides more detailed and comprehensive information than what was available to the individual's treating source.'" *Id.* (quoting Soc. Sec. Rul. 96–6p, 1996 WL 374180, at *3). That is not the case here. Rather, Dr. Vandivier had not reviewed any records from Dr. Allahham and the other non-physician medical sources at the Ephraim Specialty Center, the psychiatric specialist group to which Stines was referred by Dr. Hendrickson. [R. at 491 (Ex. 10F)]. Nor had Dr. Vandivier reviewed any records from Dr. Hendrickson himself, Stines's treating provider and primary care physician. And Dr. Brake had reviewed only some portion of such records.

Where, as here, there is a substantial body of treating source or other relevant treatment evidence that a non-examining state agency consultant did not review in formulating his opinion, the regulations "require some indication that the ALJ at least considered these facts before giving greater weight to an opinion that is not 'based on a review of a complete case record.'" *Blakley*, 581 F.3d at 409 (quoting *Fisk v. Astrue*, 253 F. App'x 580, 585 (6th Cir. 2007)). The ALJ's decision in this case contains no indication that he considered Dr. Vandivier's and Dr. Brake's limited record review—which did not extend to later primary care and psychiatric specialist treatment records—before deciding to afford their non-examining opinions great weight. The ALJ's failure to acknowledge this in his analysis and explain his decision to accord the consultants' findings great weight despite it constitutes a misapplication of the governing regulations and requires remand.

Further, though the ALJ generically referenced the state consultants' opinions' perceived consistency with Exhibits 9F (Dr. Miller and others) and 10F (Dr. Allahham and others), the opinion does not confirm meaningful balancing of § 416.927 factors with respect to these opinions. As it pertains to the supportability consideration in particular, the ALJ's vague statement that the state consultants' findings were "supported by the claimant's treatment notes and consultative exam" does not adequately explain his rationale. The sole consultative exam in the record is Dr. Fishkoff's, which occurred before a major psychological event in Stines's life (his brother's suicide). Neither Dr. Vandivier nor Dr. Brake conducted any additional consultative exam when they reviewed Stines's records in 2016. And, given the substantially varying treatment notes throughout the record (and even within individual doctor's records), this single statement in the ALJ's decision leaves the Court to guess as to which specific findings the ALJ found sufficiently supportive of the non-examining state consultants' opinions, so as to make them deserving of great

weight in the RFC assessment. *See Trent v. Astrue*, 2012 WL 4604411, at *3 (finding that "conclusory acceptance of the state agency consultants' opinions conflicts with both Ruling 96–6p and with the applicable" regulations).

Ultimately, the ALJ's decision does not clearly demonstrate that he properly applied the § 416.927 framework in considering Dr. Vandivier's and Dr. Brake's opinions. It also does not reflect that the ALJ acknowledged these non-examining consultants' limited record review in electing to accord their findings great weight. The default position, per the regulations, is typically that "the reports of physicians who have treated a patient over a period of time or who are consulted for purposes of treatment are given greater weight than are reports of physicians employed and paid by the government for the purpose of defending against a disability claim." *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980). "This is especially true where the State agency psychologists did not have the entire record for their review." *Jacques v. Comm'r of Soc. Sec.*, 940 F. Supp. 2d 729, 741 (S.D. Ohio 2013). The ALJ's failure to denote consideration of this fact or explain his "great weight" assignment under the circumstances was error.

**B. SUBSTANTIAL EVIDENCE DOES NOT SUPPORT THE ALJ'S RFC CONCLUSION.**

Absent adequate explanations per the governing regulations, the state agency consultant opinions from Dr. Fishkoff, Dr. Vandivier, and Dr. Brake cannot constitute substantial evidence supporting the ALJ's RFC determination. As these were the sole psychological opinions accorded "great weight" by the ALJ, the Court is left with little to support the ALJ's ultimate RFC analysis and conclusion. The only other medical findings the ALJ addressed in the psychological RFC context—those from Dr. Hendrickson and other providers at Danville Family Physicians—were accorded "little weight." [R. at 25]. And the ALJ accorded Stines's and Stines's parents' subjective statements only "partial weight." [*Id.*]. The ALJ's decision makes clear that the state

agency consultants' findings centrally drove the psychological component of the RCF determination.

Though the Court perceives other medical evidence in the record—perhaps even substantial evidence—that could independently produce the same RFC result, to scrutinize and marshal it in an effort to justify the ALJ's conclusion after the fact would require reweighing and *de novo* consideration of the medical record as a whole. That is decidedly beyond the Court's inquiry on judicial review of the agency decision. The Court may not substitute its own independently reached judgment for that of the ALJ. Rather, the Court may decide only whether the ALJ's actual analysis—not another analysis the ALJ *could* or *may* have performed on the same record—is supported by substantial evidence. *See Bass*, 499 F.3d at 509 (emphasizing that the Court cannot "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility").

Here, the ALJ elected to most heavily weigh three state agency consultants' opinions (two non-examining) without adequate explanation, as is required. The offered justifications for such weight collectively fail to reflect proper consideration and application of the regulatory factors and standards. Accordingly, the opinions cannot properly constitute substantial evidence supporting the ALJ's RFC conclusion. And, as these state agency opinions apparently served as at least the primary, if not the sole, psychological determinant in the ALJ's RFC calculus, the Court ultimately cannot conclude that the RFC determination in this case is supported by substantial evidence as it currently stands. Remand is thus necessary to permit the ALJ, in the first instance, either to reweigh the full medical record and amend his RFC conclusion if appropriate, or to more fully explain and justify his prior weight assignments underlying it.

## IV. CONCLUSION

For all of the reasons discussed, the Court **GRANTS** Stines's motion (DE 17), **DENIES** the Commissioner's motion (DE 19), and **REVERSES** the Commissioner's non-disability finding. The Court **REMANDS** this matter for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g). A corresponding Judgment follows.

This the 21st day of January, 2021.

